PHILLIP SHINN (SBN 112051)
phil.shinn@limnexus.com
LISA J. YANG (SBN 208971)
lisa.yang@limnexus.com
GEORGE BUSU (SBN 235993)
george.busu@limnexus.com
LIMNEXUS LLP
1055 West Seventh Street, 28th Floor
Los Angeles, California 90017
Tel.: (213) 955-9500/Fax: (213) 955-9511

Attorneys for Defendant,
Chan-Woong Park, an individual

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWER INTEGRATIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHAN-WOONG PARK, an individual; and DOES 1-20,<br><br>Defendants. | Case No. 5:16-cv-02367 EJD<br><br>**DEFENDANT PARK'S REPLY MEMORANDUM RE MOTION TO DISMISS UNDER FRCP 12(B)(1), (2)&(6)**<br><br>HRG DATE: FEBRUARY 9, 2017<br>TIME: 9:00 A.M.<br>COURT ROOM 4 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................ 1

II.  ARGUMENT .............................................................................................. 1

    A.   The Forum *Non Conveniens* and International Comity Doctrines Preclude Subject Matter Jurisdiction In This Case .............. 1

    B.   The Extra-Territoriality Doctrine Precludes Subject Matter Jurisdiction In This Case .................................................................. 4

    C.   The Cases Relied Upon by Plaintiff are Distinguishable and Inconsistent with Supreme Court and Federal Circuit Decisions ......... 7

    D.   This Court Has No Personal Jurisdiction Over Defendant .................... 9

        1.   Defendant is Not "Essentially at Home" in California .............. 9

        2.   Under the *Walden* and *Picot* Cases, There is No Specific Personal Jurisdiction ..................................................... 11

    E.   Defendant Opposes Jurisdictional Discovery as Unnecessary and Unduly Burdensome ............................................... 12

    F.   The Complaint Fails to State a Claim for Relief ............................... 13

III. CONCLUSION. ....................................................................................... 14

# TABLE OF AUTHORITIES

**Page No.**

**Cases:**

*Baker-Bauman v. Walker*, 2007 U.S. Dist. LEXIS 23080 (S.D. Ohio 2007) ......7, 8

*Calder v. Jones*, 465 U.S. 783 (1984) ................................................................12

*Carnegie Mellon University v. Marvell Tech. Group, Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015)..........................................................................8

*Coremetrics, Inc. v. AtomicPark.com, LLC*,
   370 F.Supp.2d 1013 (N.D. Cal. 2005) ..........................................................9, 10

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor*,
   589 F.Supp.2d 84 (D. Me. 2008) ....................................................................8, 9

*Halo Elecs., Inc. v. Pulse Elecs.*,
   2016 U.S.App. LEXIS 14366 (Fed. Cir. August 8, 2016)...................................4

*Jacobs Vehicle Sys., Inc. v. Yang*, 2013 U.S. Dist. LEXIS 128689 .....................2, 3

*Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*,
   24 F.3d 1368 (Fed. Cir. 1994)................................................................. *passim*

*Mavrix Photo, Inc.v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ..............12

*Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 .....................................................4, 8

*Morrison v. Nat'l Australia Bank Ltd.*
   561 U.S. 247, 130 S. Ct. 2869 (2010).........................................................6, 7, 8

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015)......................................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013).............................................................................5

*Shapiro & Son Bedspread Corp. v. Royal Mills Associates*,
   764 F.2d 69 (2d Cir. 1985)............................................................................13, 14

*Voda v. Coris Corp.,* 476 F.3d 887................................................................ *passim*

*Walden v. Fiore*, 134 S.Ct. 1115 (2014)........................................................11, 12

**Statutes:**

28 U.S.C. §§1332(a)(2); 1338(b); 1367 ................................................................1

28 U.S.C. 1338(b) or 1367 ....................................................................................1

28 U.S.C. §1653......................................................................................................1

California Business & Professions Code Section 17200.........................................13

## I. INTRODUCTION

The Complaint in this action alleges four claims for tortious interference, one claim for trade libel, and one claim for breach of California Business & Professions Code section 17200, which is based on the same allegations as the first five claims. All six claims necessarily allege tortious conduct directed at third parties, which allegedly harmed Plaintiff. Defendant and the third parties are domiciled in the Republic of Korea ("Korea"), and all of the alleged tortious conduct purportedly occurred in Korea. One of Defendant's defenses-- that he acted with justification under patents issued to him by the Korean patent office-- also involves state action by Korea, acting under Korean law. Under the undisputed facts, the proper forum for this case is Korea

## II. ARGUMENT

### A. The *Forum Non Conveniens* and International Comity Doctrines Preclude Subject Matter Jurisdiction In This Case

Plaintiff argues that the Federal Circuit's reasoning in *Voda v. Coris Corp.*, 476 F.3d 887, does not apply because *Voda* only applies to supplemental subject matter jurisdiction. Opposition at 6:15-22. Defendant disagrees. In *Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994), the Federal Circuit held that the *forum non conveniens* factors, precluding a U.S. court from adjudicating a foreign patent dispute, applied to <u>diversity jurisdiction</u> as well as to supplemental jurisdiction:

> *Mars* has informed us that it may plead diversity jurisdiction under 28 U.S.C. §1332(a)(2) by way of an amendment to the pleadings under 28 U.S.C. §1653 if we hold that the district court does not have jurisdiction under section 1338(b) or 1367. In view of this "threat" and in the interest of judicial economy, we will address certain aspects of the district court's

> decision as they may apply to the possibility of future dismissal under the doctrine of *forum non conveniens.*

The court concluded, "…<u>any attempt to replead jurisdiction based on diversity of citizenship at this point would seem ill-founded</u>." *Id.* at 1376 (emphasis added). In the present case, Plaintiff's assertion-- that the principles of international comity and *forum non conveniens* applied in *Voda* are "confined" to supplemental jurisdiction-- is contrary to *Mars* and to the weight of authority addressing the jurisdictional issue.

The *forum non conveniens* analysis begins with the question whether an adequate alternative forum exists.  Korea affords an adequate alternative forum.

> A foreign forum is adequate when (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. (citations omitted)

*Jacobs Vehicle Sys., Inc. v. Yang*, 2013 U.S. Dist. LEXIS 128689

Korea and the United States are both signatories to patent conventions (such as the Paris Convention) and are members of the World Trade Organization, which enforces the Trade-Related Aspects of Intellectual Property Rights (TRIPS). The two nations also ratified bilateral free trade agreements (e.g. The 2012 Korea-US Free Trade Agreement "KORUS").  Implicit in the signing of such treaties is the recognition of the adequacy of Korea's judicial system.  The KORUS is particularly relevant in this regard, as it includes provisions opening the Korean legal market to U.S.-based law firms, and opens Korea to overseas investments by U.S. companies.

Plaintiff has already participated in a Korean labor commission proceeding against Defendant, filing opposition papers to Defendant's petition in that case. (Walker Decl. at ¶ 13).  The service of process in the present case is further evidence of the adequacy of Korea's legal processes.  Plaintiff successfully served

process on Defendant, in Korea, pursuant to the Hague Convention.  There can be no question that the United States regards the courts of Korea as an adequate alternative forum.

*Forum non conveniens* analysis also weighs public and private interests. The factors weighed in the analysis include:

> (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises;  (5) the general facility and cost of trying the case in the selected forum; and (6) <u>the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies</u>.
>
> *Jacobs Vehicle Systems, Inc.,* 2013 U.S. LEXIS 128689 (M.D. NC, 2013) (emphasis added).

As recognized by *Voda*, *Stein*, and *Mars*, the public interests tilt strongly in favor of Korea because it is the sovereign state that issued the disputed Korean patents to Defendant.  The court's reasoning in *Mars* is instructive:

> In refusing to exercise jurisdiction over the Japanese patent infringement claim, **the district court found that that claim would require the court to resolve complex issues of Japanese procedural and substantive law, a task further complicated by "having to agree on the proper translation of laws, documents and other communications**." (citation omitted).  **The court also found that general concerns respecting international comity counsel against exercising jurisdiction over a matter involving a Japanese patent, Japanese law, and act of a Japanese defendant in Japan.**  *Id.* See *Stein Assoc., Inc. v. Herald Control, Inc.,* [citation] ("Only a British court, applying British law, can determine…infringement of British patents.")

1   *Mars,* 24 F3d at 1375-1376 (emphasis added).

2   One need only substitute "Korean" for "Japanese" in the above quote, and the
3   Federal Circuit might well have been writing about the present case.  Korea has a
4   strong state interest in deciding the, validity, scope and infringement of its patents,
5   especially among its own citizens.  All of these factors are likely issues in his case.

6   As to the first three factors of the analysis --(1) the ease of access to sources
7   of proof; (2) the availability of compulsory process for securing the attendance of
8   unwilling witnesses; (3) the costs of obtaining the attendance of witnesses—all
9   three weigh strongly in favor of Korea.  The Complaint alleges interference with
10  Plaintiff's trading partners in Korea, particularly Samsung and Dong Yang.  The
11  evidence and witnesses reside in Korea.  The cost of obtaining non-party witness
12  attendance is significantly lower if they don't have to travel from Korea to the
13  United States for depositions and trial testimony.

14  **B.    The Extra-Territoriality Doctrine Precludes Subject Matter
15          Jurisdiction In This Case**

16  In *Halo Elecs., Inc. v. Pulse Elecs.,* 2016 U.S.App. LEXIS 14366 *(*Fed. Cir.
17  August 8, 2016), the Federal Circuit rejected claims for direct infringement of
18  patents where the accused products were neither sold nor offered for sale in the
19  United States.  *Id.* [HN1].  Although some of the negotiations between the parties
20  occurred in the United States, the court invoked the Supreme Court's frequent
21  admonition that "The presumption that United States law governs domestically but
22  does not rule the world applies with particular force in patent law." *Microsoft, 550*
23  *U.S. at 454-55." Id.* [HN7].

24  As reiterated in *Halo*:
25  "Foreign conduct is [generally] the domain of foreign law," and in patent
26  cases, foreign law "may embody different policy judgments about the
27  relative rights of inventors, competitors, and the public in patented
28  inventions." (citation omitted)...As the Supreme Court has stated, if one

4
REPLY RE MOTION TO DISMISS

>desires to prevent the selling of its patented invention in foreign countries, its proper remedy lies in obtaining and enforcing foreign patents. (Citation omitted.)
>
>*Id.* [HN 8].  (Emphasis added.)

It is clear that the courts of the United States do not normally exercise jurisdiction over patent disputes involving foreign patents and foreign parties acting in foreign countries.  Although Plaintiff tries to disguise this Korean patent dispute as a domestic tort case, this lawsuit would quickly be mired in the minutia of Korean patent prosecution procedures, invalidity issues and infringement claims, all in Korean.  Moreover, a final judgment in this action might well conflict with Korean law, or purport to interpret the Korean patents before a Korean court gets the chance.

The allegations in Plaintiff's Complaint belie Plaintiff's argument that this is just a tort action.   A prime example is Plaintiff's allegation that:

>On September 9, 2015 and February 15, 2016, PARK sent letters to Dong Yang, and on September 9, 2015 and April 19, 2016, PARK sent letters to Samsung, alleging that products supplied or recommended by Plaintiff, and incorporated into their products, infringed on PARK's Korean '481 and '958 patents.
>
>Complaint at ¶¶ 12, 13, 14 & 15.

This is the central allegation in the Complaint; the crux of the Plaintiff's lawsuit.  There is no breach of contract claim pleaded in the Complaint.

Plaintiff, Power Integrations, has a history of over-reaching to pursue extra-territorial claims.  In *Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc*. 711 F.3d 1348, 1371-72 (Fed. Cir. 2013), the Plaintiff sought worldwide damages from Fairchild for infringement of the Plaintiff's U.S. patents on power supply devices for mobile phones.  The Federal Circuit rejected Plaintiff's gambit:

> "… **Regardless of how the argument is framed under the facts of this case, theunderlying question here remains whether Power Integrations is entitled to compensatory damages for injury caused by infringing activity that occurred outside the territory of the United States. The answer is no.** Power Integrations is incorrect that, having established one or more acts of direct infringement in the United States, it may recover damages for Fairchild's worldwide sales of the patented invention because those foreign sales were the direct, foreseeable result of Fairchild's domestic infringement. Power Integrations has not cited any case law that supports an award of damages for sales consummated in foreign markets, regardless of any connection to infringing activity in the United States. To the contrary, the entirely extraterritorial production, use, or sale of an invention patented in the United States is an independent, intervening act that, under almost all circumstances, cuts off the chain of causation initiated by an act of domestic infringement. *Cf. Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869, 2884, 177 L. Ed. 2d 535 (2010) ("But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.").
> *Id.* at 1371, 1372 (emphasis added).

In its Opposition, Plaintiff strains to allege *some* domestic activity in a vain effort to re-cast its lawsuit as solely a domestic tort matter.  Plaintiff quotes liberally from its 15 and 16-year old employment agreements with Defendant, and engages in speculation about Defendant's state of mind (e.g. "Park became increasingly upset" Opp. at 3:11); ("Park was trying to hold hostage technology…" Opp. at 4:12), as well as a one-sided, but legally irrelevant, critique of Defendant's actions during his employment with Plaintiff (Opp.at 3:11– 4:23).

But when it comes to the actual operative allegations giving rise to this tortious interference action, Plaintiff returns to the same core allegations contained

in its Complaint: that Defendant wrongfully obtained Korean patents of technology that Plaintiff claims as its own, and used those Korean patents to write cease and desist letters in Korea, to Korean companies (Opp. at 5:5-17).  That is the gravamen of Plaintiff's lawsuit.  But if, as held in Power Integration's action against Fairchild, a U.S. court could not award patent damages for infringing foreign acts, surely it cannot award tort damages for any alleged foreign patent infringement.  Plaintiff cannot escape the conclusion that the appropriate forum is therefore Korea.

### C. The Cases Relied Upon by Plaintiff are Distinguishable and Inconsistent with Supreme Court and Federal Circuit Decisions

The cases relied upon by Plaintiff are distinguishable and, in the case of *Baker-Bauman*, inconsistent with the Supreme Court's subsequent decision in *Morrison v. Nat'l Australian Bank, Ltd.,* 561 U.S. 247 (2010).  In *Baker-Bauman v. Walker*, 2007 U.S. Dist. LEXIS 23080 (S.D. Ohio 2007), the plaintiff sued in the Southern District of Ohio for infringement of both U.S. and foreign patents.  The district court asserted jurisdiction over both the domestic and foreign patent infringement claims.  The case is clearly distinguishable because there, as the Ohio district court noted, the defendant failed to raise *forum non conveniens* as a defense to subject matter jurisdiction over the foreign patent claims ("Herein, the Defendant has not sought dismissal of the infringement of the foreign patent claims on the basis of that doctrine, even though the Federal Circuit has indicated that *forum non conveniens* can serve as a basis for dismissing such claims," *Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed.Cir. 1994)" ).

The opposite is true here.  Defendant asserts *forum non conveniens* as a bar to subject matter jurisdiction.  The allegations in the Complaint, and the Declaration of Chan Woong Park filed with this motion, establish the "public interest," "local interest," and practical difficulties factors recognized in *Mars*, 24 F.3d at 1375-1376.  Issues of Korean patent law, patent procedures, language

barriers, witness availability, costs and legal interpretations, all weigh in favor of Korea as the proper forum for this dispute.

The *Baker-Bauman* court also distinguished *Voda* on the ground that it did not apply to diversity jurisdiction. However, the Ohio district court's decision in *Baker-Bauman* is inconsistent with the Federal Circuit's ruling in *Mars*, which teaches that *forum non conveniens* and international comity principles preclude supplemental and diversity jurisdiction over foreign patent disputes. *Mars*, 24 F.3d at 1375-1376.

*Baker-Bauman* is also inconsistent with contemporaneous and subsequent Supreme Court decisions that subject U.S. patent laws to the same extra-territoriality limits as other U.S. laws. *Microsoft Corp. v. AT&T Corp.,* 550 U.S. 437, 454 (patent laws subject to presumption against extra-territorial reach); *Morrison v. Nat'l Australia Bank, Ltd.,* 561 U.S. 247, 255 (2010). See *Carnegie Mellon University v. Marvell Tech. Group, Ltd.,* 807 F.3d 1283, 1306 (Fed. Cir. 2015) ("The Supreme Court has confirmed that the patent laws, like other laws, are to be understood against a background presumption against extraterritorial reach.")

Plaintiff's reliance upon *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor,* 589 F.Supp.2d 84 (D. Me. 2008), is also misplaced. (See Opp. at 6:28-7:3.)  The parties in *Fairchild* entered into a worldwide cross-licensing agreement, encompassing both US and foreign patents, and the agreement contained a forum selection clause, designating either Maine or Texas as the forum for litigating disputes under the agreement. *Id.* at 85.  When a dispute arose over the non-payment of royalties, the Maine district court enforced the forum selection clause. *Id.* at 86.  In weighing *forum non conveniens* factors, the court recognized that, in the absence of a forum selection clause, the Federal Circuit's ruling in *Mars* would defeat diversity jurisdiction: "In *Mars*, without a forum selection clause, the Federal Circuit said that those factors would require dismissal of even a diversity case." *Id.* at 94.  The court noted that the only foreign

1  patent issue it would have to decide was whether Fairchild's products were
2  "covered" by the foreign patents.   Invalidity of the foreign patent was not an issue
3  in the case. *Id.* at 99.
4      *Fairchild* is distinguishable on multiple grounds.  Here, there is no forum
5  selection clause designating California as the forum to adjudicate Korean patent
6  issues.  There is no worldwide cross-licensing agreement that contemplates
7  possible disputes over foreign patents.  However, at the core of this case is an
8  invalidity issue concerning Defendant's Korean patents, which raises international
9  comity considerations- the deference that nations give to government actions by
10 sister nations.  Here, Plaintiff is clearly challenging the Korean Patent Office's
11 issuance of patents to Defendant, and *Fairchild* is not applicable.
12     *Fairchild* is also distinguishable because there, both parties involved were
13 U.S.-based companies.  The court noted that, "At the end of the day, this is a
14 contractual dispute between two American companies licensing semiconductor
15 technology, who voluntarily chose United States courts for their license disputes.
16 Their choice of forum should be honored." *Id.* at 100.  In contrast, this is a tortious
17 interference case against a Korean individual, alleging misuse of Korean patents
18 and misconduct against third parties in Korea.  The reasoning in Fairchild is
19 inapposite.

**D.     This Court Has No Personal Jurisdiction Over Defendant**

   **1.     Defendant is Not "Essentially at Home" in California**

In relying upon *Coremetrics, Inc. v. AtomicPark.com, LLC*, 370 F.Supp.2d 1013 (N.D. Cal. 2005), Plaintiff asserts that it only need "a prima facie showing of jurisdictional facts," and asks this Court to apply an obsolete standard that has been superseded by the U.S. Supreme Court decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  In *Daimler*, the Supreme Court articulated the "essentially at home" standard for all purpose general personal jurisdiction.  The *Daimler* court explained:

> The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business. [Citations omitted.] … With respect to all-purpose jurisdiction, *International Shoe* spoke … of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." [Citations omitted.] Accordingly, the proper inquiry, this Court has explained, is whether a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." [Citations omitted.]

*Id.* at 749 (emphasis added).

In the present case, the Complaint clearly admits that Defendant is not domiciled in California. (Complaint at ¶¶ 2 & 6: Defendant PARK resides in South Korea and was employed by Plaintiff from November 2000 to October 2008).

In its Opposition, Plaintiff alleges that "Park has had…" contacts with California. (Opp. At 8:9). This deliberate use of the past perfect tense is purposely vague, as it seeks to avoid the fact that Defendant has not set foot in California in almost 10 years, and has no other contacts with the forum (Park Decl. at ¶¶ 1-7). Defendant's affiliations with California are clearly not so continuous and systematic as to render him "essentially at home" in California.

Even if the *Coremetrics* standard still applied, it is factually distinguishable from this case in that neither the Complaint nor Plaintiff's Opposition alleges that Defendant ever created a "highly interactive website for selling products accessible to California consumers," (Opp. at 9:12-13), or that he sold products to California consumers. *Coremetrics* is factually distinguishable and superseded by the "essentially at home" standard.

### 2. Under the Walden and Picot Cases, There is No Specific Personal Jurisdiction

Plaintiff fails to apply the standards for specific personal jurisdiction articulated in the U.S. Supreme Court's decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014) and the Ninth Circuit's recent decision in *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015), both of which were discussed at length in Defendant's opening motion papers. (See Defendant's Motion to Dismiss at 11:22-13:8.)

There is no competent evidence that Defendant purposefully directed his actions at California, as opposed to Plaintiff, which resides in California. On the issue of purposeful direction, the only evidence that Plaintiff offers is paragraph 18 of the Declaration of Clifford J. Walker ("Walker Decl."). (Opp. at 11:12-21.) The only exhibits to the Walker Decl. are Exhibit A: the Invention Agreement; and Exhibit B: a letter that Defendant allegedly wrote to Plaintiff. In Paragraph 18, Mr. Walker asserts:

> 18. In 2015, Park began asserting the patents he eventually obtained in Korea using Power Integrations' proprietary information and technology against Power Integrations' customers. Park has sent multiple cease and desist letters accusing Power Integrations' products and design recommendations of infringing patents Park purports to own to Power Integrations' customer Dong Yang E&P Inc. and its customer Samsung Electronics. Through his prior employment with Power Integrations, Park knew that Dong Yang and Samsung export their products containing Power Integrations' technology to California. Park's letters to these companies highlighted that Park had already filed applications for his purported invention in the United States and that if the companies sell the products in the United States it will cause a legal dispute.

Everything alleged in Paragraph 18 occurred in Korea. The only mention of California is Mr. Walker's speculation about Mr. Park's state of mind. It is no

11

REPLY RE MOTION TO DISMISS

secret that Samsung and Dong Yang are well-known Korean companies that export products internationally.  If Defendant's letters to international electronics companies based in Korea caused injury that are deemed "tethered to [California] in any meaningful way" (*Walden*, 134 S.Ct. at 1125), the rest of the cellphone-using world could theoretically exercise personal jurisdiction over him on the same basis.  The connection between Mr. Park's letters (to Samsung and Dong Yang) and California are too attenuated to meet the "purposeful direction" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984).  The second prong of the *Calder* test requires conduct "expressly aimed at the forum state."  *Mavrix Photo, Inc.v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011).   Plaintiff fails to allege any tortious activity by Defendant expressly aimed at California.

### E. Defendant Opposes Jurisdictional Discovery as Unnecessary and Unduly Burdensome

If the Court finds that it does not have subject matter jurisdiction in this case, Plaintiff's request for jurisdictional discovery on the personal jurisdiction issues will become moot.  Even if the Court finds subject matter jurisdiction, the possible value of jurisdictional discovery sought by Plaintiff will be outweighed by the cost to Defendant and third parties.  Plaintiff contends that Defendant intentionally directed his actions at California.  If that is true, the evidence is in California, where Plaintiff and its lawyers reside.  The Plaintiff has access to all of the contracts, correspondence, employment records, patent applications, sales records, and public license that could possibly be relevant to the personal jurisdiction issue.  As evidenced by Mr. Walker's sworn declaration regarding Defendant's correspondence with Samsung and Dong Yang, the Plaintiff presents as though it already has third-party correspondence between Defendant and those entities.

In contrast to Plaintiff's vast resources, Defendant's resources are limited. Defendant should not be forced to expend attorneys' fees and resources to (1) respond to written interrogatories and requests for production, and (2) sit for a

1  deposition having incurred the cost of flying counsel to Korea to prepare for and
2  defend such a deposition.[1]  Jurisdictional discovery would impose an unreasonable
3  burden on Defendant in light of the imbalance of information and resources that
4  overwhelmingly favor Plaintiff in this case.

### F. The Complaint Fails to State a Claim for Relief

Four of Plaintiff's claims for relief are for tortious interference, the fifth is for trade libel, and the sixth is based on the California Business & Professions Code Section 17200.  In its Opposition, Plaintiff makes essentially the same argument in defense of each of its six claims for relief.  Plaintiff argues that Defendant's justification defense is invalid because Defendant's assertion of its Korean patent rights was "baseless" and in bad faith.  (Opp. at 16:12; 18:12-16; 19:8-9).  Once again, however, Plaintiff's own Complaint belies this argument, because Plaintiff alleges that:

> PARK has been issued Korean Patent Nos. 1588481 (hereafter, "Korean '481 patent") and 1536958 (hereafter, "Korean '958 patent", "which are based on [Plaintiff's] "Proprietary Information;"
>
> (Complaint at ¶ 9.)

All of the alleged conduct occurred in Korea, and is therefore extra-territorial conduct involving Korean patents, which are beyond the subject matter jurisdiction of the Court.

Furthermore, as noted by the Second Circuit in *Shapiro & Son Bedspread Corp. v. Royal Mills Associates,* 764 F.2d 69, 75 (2d Cir. 1985),  the justification defense prevails where the interference claim is based on the defendant's assertion of intellectual property rights that the defendant allegedly received by law.  This is

---

[1] Upon inquiry, counsel for Power Integrations indicated that the contemplated jurisdictional discovery would be for "limited interrogatories and requests for production, along with one deposition."  Defendant assumes the "one deposition" would be of Defendant, in Korea.

13
REPLY RE MOTION TO DISMISS

true even if, eventually, it turns out that the defendant's claimed IP rights turn out to be invalid. In *Shapiro*, the Second Circuit recognized that Shapiro's copyright claim might have been invalid when Shapiro notified Royal's customers that they might face legal consequences for infringing on Shapiro's copyright. ("[I]f in fact, Shapiro has a valid copyright…as may prove to be the case, sellers of infringing works may indeed be subject to certain sanctions.") *Id.* at 75.  *Shapiro* involved copyrights, but the reasoning applies equally to the present patent case. Defendant was justified in his communications with third parties based on the issuances of the Korean patents to Defendant, regardless of the ultimate validity of the Korean patents.

## III.  CONCLUSION

For the reasons stated in this Reply and in Defendant's opening Memorandum, the action should be dismissed in its entirety for lack of subject matter and personal jurisdiction, as well as failure to state a claim upon which relief may be granted.

Dated: September 13, 2016          LIM NEXUS LLP

By  /s/ *Phillip Shinn*
    Phillip Shinn
    Attorneys for Defendant