UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

POWER INTEGRATIONS, INC.,

Plaintiff,

v.

CHAN-WOONG PARK,

Defendant.

Case No.  16-cv-02367-BLF

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

[Re: ECF 18]

Plaintiff Power Integrations, Inc. ("Power Integrations") brings this suit against Defendant Chan-Woong Park ("Park") alleging that Park interfered with contractual relations and prospective economic relations, among other causes of actions.  Park moves to dismiss the complaint for lack of personal jurisdiction over him, for lack of subject matter jurisdiction, and for failure to state a claim.  Mot., ECF 18.  Pursuant to Civ. L.R. 7-1(b), the Court finds Park's motion to dismiss suitable for submission without oral argument and hereby VACATES the hearing scheduled for March 16, 2017.  For reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion.

I.   BACKGROUND

Power Integrations filed two separate complaints against Park on the same day in this District, Case No. 16-cv-02366 (N.D. Cal. Apr. 29, 2016) and this case.  In these two related cases, the parties are identical and the relevant facts are also overlapping.  The Court has issued an order in the related case, Case No. 16-cv-02366, denying Park's motion to dismiss.  The Court will summarize the facts as alleged by Power Integrations briefly here.[1]

---

[1] When a defendant challenges a court's personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

United States District Court
Northern District of California

Power Integrations is a Delaware corporation that supplies electronic components used in high voltage power conversion systems. Compl. ¶ 5, ECF1. Its headquarters and principal place of business are in San Jose, California. *Id.* ¶ 1. Park was an employee of Power Integrations from approximately November 2000 to October 2008. *Id.* ¶ 6. On March 29, 2001, Park signed an Employee Agreement Regarding Confidentiality and Inventions ("Inventions Agreement," or "IA") in San Jose, California, agreeing that any information related to conception, design, development or support of Power Integrations' products ("Proprietary Information") belongs to Power Integrations. *Id.* ¶ 7; Compl. ¶ 7.

Power Integrations alleges that it has learned that Park is using its Proprietary Information to file and obtain patents in the United States and South Korea, including Korean Patents Nos. 1436958 and 1588481, and that Park is interfering with its business relationships. *Id.* ¶¶ 8-15. Specifically, Park sent letters to Dong Yang E&P Inc. ("Dong Yang"), and Samsung Electronics ("Samsung"), customers of Power Integrations, claiming that the products supplied by Power Integrations infringe his Korean patents. *Id.* ¶¶ 12-15.

In its complaint, Power Integrations asserts that Park intentionally and negligently interfered with its contractual relations. *Id.* ¶¶ 19-27. Power Integrations further asserts that Park intentionally and negligently interfered with its prospective economic relations. *Id.* ¶¶ 29-41. In addition, Power Integrations claims that the statements Park made to its customers were false and disparaging, giving rise to the claim of trade libel. *Id.* ¶¶ 43-48. Finally, the complaint asserts violations of California Business and Professions Code section 17200 ("UCL"). *Id.* ¶¶ 50-51.

Park moves to dismiss the complaint based on lack of personal jurisdiction and belatedly has raised a forum non conveniens basis for dismissing this case on reply. Mot.; Reply, ECF 26. The Court granted leave for Power Integrations to file a sur-reply to respond to Park's forum non conveniens arguments. ECF 45. Park also moves to dismiss each of the asserted claims for failure

---

The plaintiff may meet that burden by submitting affidavits and discovery materials. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Similarly, in deciding a Rule 12(b)(1) motion, the court is not restricted to the pleadings, but can also "review any evidence, such as affidavits and testimony, to resolve factual disputes regarding the evidence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citation omitted).

1    to state a claim and for lack of subject matter jurisdiction.  Mot.

2    **II.    LEGAL STANDARD**

3        **A.    Personal Jurisdiction**

4        Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an

5    action for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "Where, as here, the defendant's

6    motion is based on written materials rather than an evidentiary hearing, the plaintiff need only

7    make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Ranza v.*

8    *Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted).

9    "[T]he plaintiff cannot simply rest on the bare allegations of its complaint."  *Schwarzenegger v.*

10   *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation

11   omitted).  However, uncontroverted allegations in the complaint are accepted as true, and factual

12   disputes created by conflicting affidavits are resolved in the plaintiff's favor.  *Id.*

13       Where no applicable federal statute governs personal jurisdiction, "the law of the state in

14   which the district court sits applies."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements*

15   *Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  "California's long-arm statute allows courts to exercise

16   personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the

17   United States Constitution."  *Id.*  "[D]ue process requires that the defendant 'have certain

18   minimum contacts' with the forum state 'such that the maintenance of the suit does not offend

19   traditional notions of fair play and substantial justice.'"  *Ranza*, 793 F.3d at 1068 (quoting *Int'l*

20   *Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted).

21       **B.    Forum Non Conveniens**

22       A party seeking dismissal of an action on forum non conveniens grounds "must show two

23   things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and

24   public interest factors favors dismissal."  *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201,

25   1206 (9th Cir. 2009) (citation omitted).  "At the outset of any *forum non conveniens* inquiry, the

26   court must determine whether there exists an alternative forum."  *Piper Aircraft Co. v. Reyno*, 454

27   U.S. 235, 255 n.22 (1981).  Then, the court "must evaluate both the convenience of the parties and

28   various public-interest considerations."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of*

United States District Court
Northern District of California

*Texas*, 134 S. Ct. 568, 581 (2013); *see also Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 723 (1996).  The plaintiff's choice of forum is also entitled to some weight, and "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

When an alternative forum has jurisdiction to hear the case, a federal court may dismiss on the ground of *forum non conveniens* if "trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"  *Id.* at 429 (alterations in original) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994)).

The factors relating to the private interests of the litigants include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011) (citing *Boston Telecomms.*, 588 F.3d at 1206-07).  The public factors related to the interests of the forums include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."  *Carijano*, 643 F.3d at 1232 (*Boston Telecomms.*, 588 F.3d at 1211).

Dismissal on *forum non conveniens* grounds represents a court's determination, after balancing all of the relevant factors, that "in light of certain conditions . . . jurisdiction ought to be declined."  *Am. Dredging*, 510 U.S. at 453. This determination is committed to the trial court's sound discretion.  *Sinochem*, 549 U.S. at 429; *Piper Aircraft*, 454 U.S. at 257.

## C.   Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

United States District Court
Northern District of California

729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    DISCUSSION

### A.    Personal Jurisdiction

"The strength of contacts required [for exercising personal jurisdiction] depends on which of the two categories of personal jurisdiction a litigant invokes:  specific jurisdiction or general jurisdiction."  *Ranza*, 793 F.3d at 1068.  Power Integrations contends that Park is subject to both general jurisdiction and specific jurisdiction.  The Court addresses those contentions in turn.

#### i.    General Personal Jurisdiction

The parties' arguments on whether Park is subject to general jurisdiction are the same as those presented in Case No. 16-cv-02366 in connection with Park's motion to dismiss the complaint.  Park argues that there is no general jurisdiction because he is not domiciled in California and "has not stepped foot in California for almost ten years."  Mot. 10.  He also has no contact with this forum that would constitute a "continuous and systematic" affiliation with California.  Reply 9-10 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014)).

Power Integrations contends that Park has sufficient contacts to give rise to general jurisdiction citing to several allegations.  Opp'n 8-9.  The totality of these contacts, Power Integrations argues, shows a pattern of continuous contacts with California.  *Id.* at 9 (citing *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1024 (N.D. Cal. 2005)).

United States District Court
Northern District of California

General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [him] essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761 (internal quotation marks and citation omitted).  A nonresident that is subject to the court's general jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-related activities. *Id.* (internal quotation marks and citation omitted) (emphasis omitted).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.*

Power Integrations admits that Park is not a California resident but cites the following facts in an attempt to demonstrate that Park has continuous and systematic contacts with California:  (1) Park had lived in California between 2001 and 2003; (2) Park executed the IA, governed by California law; (3) Park corresponded with Power Integrations for business and personal reasons; (4) Park filed patent applications to assert patents against Power Integrations' customers in California; (5) Park sent "business proposals" to California; (6) Park sent cease and desist letters to Power Integrations' customers; and (7) Park discussed settlement with Power Integrations. Opp'n 8-9.

None of these weigh in favor of a finding that Park is subject to general jurisdiction in California.  Where Park had lived or worked prior to the filing of this case is not relevant here, because "the focus [of this inquiry] is upon the domicile of the parties at the time the action is filed," not at some prior time. *E.g.*, *Repp v. Or. Health Scis. Univ.*, 972 F. Supp. 546, 549 n.2 (D. Or. 1997).  Park's interaction with Power Integrations, alone, also cannot render him "essentially at home" in California. *E.g.*, *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders"); *see also Schwarzenegger*, 374 F.3d at 801 (finding that being party to a contract governed by California law is not sufficient for general jurisdiction in California).  As such, the correspondence between the parties regarding Park's compensation and settlement, and the cease and desist letters Park had allegedly sent to California are not sufficient to subject him to general jurisdiction.

6

*Coremetrics*, a case cited by Power Integrations, is not analogous to this case.  In *Coremetrics*, the court, although acknowledging that the facts presented a close situation, decided that there was general jurisdiction because of the many contacts the defendant had with California, including the "volume of sales made to California consumers—both in absolute numbers and as a percentage of total sales," making up its largest percentage of sale by state.  370 F. Supp. 2d at 1021-23.  The degree of contact Park has with California is not similar to that of the defendant in *Coremetrics* and there is also no allegation that a substantial portion of Park's business or personal relationships are in California.  Based upon the facts of this case, the Court finds that Park is not "at home" in California, and thus is not subject to this Court's general jurisdiction.

### ii.   Specific Personal Jurisdiction

Park presents the same arguments against finding specific personal jurisdiction as those in his motion to dismiss filed in Case No. 16-cv-02366.  Power Integrations' argument in this case is focused on the "purposeful direction" inquiry as opposed to "purposeful availment."  Opp'n 11, ECF 20.  Specifically, Power Integrations contends that there is purposeful direction because Park intentionally interfered with, and attempted to disrupt Power Integrations' business by targeting Power Integrations' customers.  *Id.*

The Ninth Circuit has established a three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction in a forum:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)  the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

#### a.  Purposeful Direction

Because the causes of action asserted in the complaint involve tortious conduct, "purposeful direction" is indeed the first prong of the test for specific personal jurisdiction in this

United States District Court
Northern District of California

United States District Court
Northern District of California

1   case. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing

2   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  In determining

3   whether a defendant purposefully directs his activities at the forum state,  courts apply an "effects"

4   test that focuses on the forum in which the defendant's actions were felt, whether or not the

5   actions themselves occurred within the forum  *Mavrix*, 647 F.3d at 1228 (citations omitted).  The

6   "effects" test requires that "the defendant allegedly must have (1) committed an intentional act, (2)

7   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

8   suffered in the forum state." *Id.* (citations omitted). In the motion to dismiss, Park only disputes

9   the second prong of "expressly aiming."  Mot. 11.  The Ninth Circuit does not require in

10  purposeful direction cases that all (or even any) jurisdictionally relevant effects have been caused

11  by wrongful acts.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,

12  1208 (9th Cir. 2006).  Thus, the Court considers the alleged tortious act of Park as well as his

13  other alleged contacts with California in considering whether specific jurisdiction is proper.

14          First, the Court finds that Park "committed an intentional act," and Park does not dispute

15  this.  Mot. 11. Power Integrations alleges that Park, as a former employee, knew information

16  related to Power Integrations' customers.  Walker Decl. ¶ 18, ECF 20-1.  He then intentionally

17  sent cease and desist letters to Dong Yang and Samsung in Korea.  *Id.*  Park then contacted Power

18  Integrations in California numerous times to discuss these cease and desist letters.  *Id.* ¶ 20.  Park

19  has also had several discussions in person with Power Integrations CEO Mr. Balakrishnan to

20  resolve the dispute.  *Id.* These alleged facts support that Park had committed an intentional act.

21          Second, the Court finds that Park's acts were "expressly aimed" at California, the forum

22  state.  The "express aiming" requirement "is satisfied when the defendant is alleged to have

23  engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of

24  the forum state." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir.

25  2000).  *Dole Food Co. v. Watts* presents a situation similar to the case here.  303 F.3d 1104, 1112

26  (9th Cir. 2002).  The Ninth Circuit in *Dole* found that the California court had specific jurisdiction

27  over the defendants who were citizens and residents of European countries based on their alleged

28  fraudulent conduct against the plaintiff, Dole Food Company ("Dole"), whose headquarter was in

United States District Court
Northern District of California

California.  *Id.* at 1108.  Dole alleged that the defendants persuaded it to switch from a "cost and freight" system to a "landed duty paid" system only to later lease warehouse space to Dole at exorbitant rates.  *Id.* at 1109.  In finding "purposeful direction," the Ninth Circuit found that the non-resident defendants' actions were "expressly aimed" at California because they knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers.  *Id.* at 1112.  The court also specifically noted that while not every communications with Dole about foreign operations would create specific jurisdiction, here the defendants' fraudulent communications were not "untargeted negligence," but rather were "performed for the very purpose of having their consequences felt in the forum state."  *Id.*

Here, according to Power Integrations' complaint and the supporting declaration, Park obtained information relating to Power Integrations' technologies and customers while employed by Power Integrations.  Walker Decl. ¶¶ 13, 18.  Armed with that knowledge, he filed patent applications in his own name based on Proprietary Information taken from Power Integrations and began asserting patent rights against Power Integrations' customers.  *Id.* ¶¶ 16, 18.  Park then contacted Power Integrations in California numerous times to discuss these cease and desist letters.  *Id.* ¶ 20.  Park knew that Dong Yang and Samsung exported their products containing Power Integrations' technology to California and in the cease and desist letters, stated that selling those products in the United States will cause a legal dispute.  *Id.* ¶ 18.  Park also had several discussions in person with Power Integrations CEO Mr. Balakrishnan to resolve the dispute.  *Id.* ¶ 20.  Moreover, Park repeatedly reached out to Power Integrations in California through phone calls, emails, written correspondences, and requests to meet in person with Power Integrations' executives to discuss "business proposals," in an attempt to sell back to Power Integrations its own technology.  *Id.* ¶ 17; Opp'n 11 n.3.  These alleged facts support that Park's conduct expressly aimed at California, the location of Power Integrations' headquarter and principle place of business.  Although Park argues that his conduct occurred in Korean, this does not preclude finding that his conduct was aimed at California.  Like the defendants in *Dole*, whose conduct occurred mostly outside of the forum state, the conduct was not "untargeted negligence" but had

United States District Court
Northern District of California

1    the "purpose of having [the] consequences felt in [by Power Integrations in California]."  *Dole*,

2    303 F.3d at 1112.

3         The Court does not find that the cases relied upon by Park, *Walden v. Fiore* and *Picot v.*

4    *Western*, preclude a finding of specific personal jurisdiction in this case.  134 S. Ct. 1115, 1125

5    (2014); 780 F.3d 1206, 1215 (9th Cir. 2015); Mot. 11-13.  As noted by Park, *Walden* concerns a

6    false arrest of Nevada and California residents made by a Georgia police officer in a Georgia

7    airport.  134 S. Ct. at 1120.  The Supreme Court found that the officer defendant, a resident of

8    Georgia, was not subject to the jurisdiction of Nevada because the Nevada resident plaintiff was

9    the only link between the defendant and the forum.  *Id.* at 1126.  However, the Georgia police

10   officer's fortuitous link to Nevada is not comparable to Park's extensive contacts directed to

11   California based on his use of Power Integrations' Proprietary Information and other

12   communications he initiated with Power Integrations and its customers.

13        As to *Picot*, the facts are also distinguishable.  In *Picot*, the two partners in a venture

14   disputed their obligations pursuant to an oral agreement that was formed in Michigan, based on

15   work that was performed in Michigan, directed mostly to customers in Michigan.  780 F.3d at

16   1209-10.  Because *Picot* concerned claims that arose primarily out of a contractual dispute, *Picot*'s

17   application on "purposeful direction" is limited.  Regardless, *Picot* is distinguishable.  Although

18   the defendant traveled to California twice and the plaintiffs sought California investors to support

19   the venture, the court found those contacts to be insufficient for a California court to exercise

20   jurisdiction.  *Id.* at 1213.  In *Picot*, the defendant's travel to California created no more than a

21   "transitory presence" in California.  *Id.*  Moreover, the Ninth Circuit determined that the

22   defendant's travel aided the plaintiffs' search for California inventors and was conduct initiated by

23   the plaintiffs.  *Id.*  In contrast to *Picot*, Park repeatedly reached out to California to communicate

24   with Power Integrations and purposefully asserted his patents against Power Integrations'

25   customers.  Because these and other facts discussed above, *Picot* does not compel a different

26   conclusion.

27        Now turning to the third element of the "effects" test, the Court concludes that Park has

28   caused harm that he knew was likely to be suffered in California.  "[A] corporation can suffer

economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Dole*, 303 F.3d at 1113.  Because Power Integrations' headquarter and principle place of business are in California and Power Integrations alleges that it has suffered harm based on Park's conduct, this element is satisfied and Park does not dispute this third element.  Mot. 11.

b.   Arising Out of Forum-Related Activities

As to the second prong of the test, the Court finds that Power Integrations' claims arise out of and are related to Park's California-related activities.  Park presents no argument directed to this prong.  In determining whether a plaintiff's claims arise out of the defendant's forum-related activities, the Ninth Circuit applies a "but-for" test.  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).  That is, but for Park's contacts with California, would Power Integrations' claims against Park have arisen?  *See Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003).

Power Integrations asserts claims of tortious interference with contractual relations and prospective economic relations, trade libel, and UCL, all of which are based on Park's relationship with Power Integrations and his communications with Power Integrations' customers discussed above.  These causes of actions could not have arisen but for Park's contacts aimed at Power Integrations and its customers.  Had Park not targeted Power Integrations' customers, the effects of which were felt in California, the basis for the claims simply would not exist.  Thus, Power Integrations has shown that its claims arise out of Park's contacts aimed at California.

c.   Determining Whether the Exercise of Jurisdiction Would Be Reasonable

The third prong of the specific jurisdiction test ensures that the exercise of personal jurisdiction comports with fair play and substantial justice.  Jurisdiction is presumed to be reasonable once the first two prongs have been met.  *See Schwarzenegger*, 374 F.3d at 802.  The burden then shifts to the defendant "to 'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir.2011) (quoting *Burger King*, 471 U.S. at 477-78).  In determining "whether the exercise of jurisdiction comports with fair play and substantial justice and is therefore reasonable," the court considers the following seven factors:

11

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource*, 653 F.3d at 1079 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002)).

Park argues that an exercise of jurisdiction would be unreasonable because he is a foreign national, and should not be "haul[ed] [] across the world to litigate his rights to Korean patents." Mot. 13. He also states that South Korea should be the sovereignty to resolve this dispute and would be the most efficient forum, and that California has no interest in a dispute concerning Korean patents. *Id.*

First, Park conclusorily states that as a foreign national, litigating the case imposes financial hardship but does not elaborate how the alleged hardship differs from the burden of litigation generally. Further, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Second, the Court has already addressed above that his relationship and contacts aimed at California should have reasonably apprised him of a potential future litigation in California so the extent of Park's "purposeful injection into the forum state's affairs" justifies the exercise of jurisdiction. Third, as to Park's argument that there could be conflicts with South Korea's sovereignty, that California has minimal interest in a dispute concerning Korean patents, and South Korea is an efficient forum, these arguments are not entirely persuasive because the causes of action are tortious acts and may not necessarily concern Korean patents. Compl. ¶¶ 19-22, 29-34, 36-51. Lastly, not only does California have an interest in adjudicating this case, but it is also important to Power Integrations to obtain convenient and effective relief in this forum, at least because of Park's contacts aimed at California, as discussed above. Considering all of these factors, Park has not made a "compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802.

United States District Court
Northern District of California

12

### B.   Subject Matter Jurisdiction

The parties' arguments on whether this Court has subject matter jurisdiction over all the asserted claims are the same as those presented in Case No. 16-cv-02366 in connection with Park's motion to dismiss the complaint.  Park insists that this case is a Korean patent dispute in disguise, referring to the allegation in the complaint that Park sent letters to Samsung representing that Power Integrations' products infringed his Korean patents.  Reply 5.  Power Integrations counters that this case is about "ownership" of intellectual property, and not a case about infringement of foreign patents.  Opp'n 7.

Courts have frowned upon exercising jurisdiction over infringement and validity issues of foreign patents, either in the context of supplemental jurisdiction or others.  *Voda v. Cordis Corp.*, 476 F.3d 887, 898 (Fed. Cir. 2007).  In many circumstances, factors of "judicial economy, convenience, fairness, and comity" do not weigh in favor of exercising jurisdiction over foreign patent law issues.  *Id.* at 898, 905; *see also Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1370, 1373-75 (Fed. Cir. 1994); *Stein Assocs., Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 655-56. (Fed. Cir. 1984).

Here, the complaint asserts causes of action sounding in tort and it is not disputed that there are no patent infringement claims asserted.  However, in support of its causes of action, Power Integrations claims that the Korean patents are "invalid," in several instances in the complaint as set forth below.

> Park's claims and demands are baseless. Park's '958 and '481 Patents are invalid and based on Power Integrations' Proprietary Information such that they belong to Power Integrations, not Park.

Compl. ¶ 16.

> Park's conduct was wrongful as it misrepresented the validity and ownership of the '958 and '481 Patents, disparaged Power Integrations' products by characterizing them as infringing valid Park-owned patents and violated California Business and/or Professions Code § 17200.

*Id.* ¶ 32.

> Park's conduct was wrongful as he misrepresented the validity and ownership of the '958 and '481 Patents, disparaged Power Integrations' products by characterizing them as infringing valid Park-owned patents and violated California Business and/or Professions Code § 17200.

*Id.* ¶ 39.

> Park made statements to at least Dong Yang that would be clearly or necessarily understood to have disparaged the quality of Power

United States District Court
Northern District of California

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Integrations' products, including without limitation that those products infringed Park's valid '958 and '481 Patents.   Park's statements were untrue. Park's '958 and '481 Patents are invalid and based on Power Integrations' Proprietary Information such that they belong to Power Integrations, not Park.

*Id.* ¶¶ 43-44.

At least since September 2015, Park has committed acts of unfair competition, as described by Business and Professions Code section 17200, by misrepresenting the validity and ownership of the '958 and '481 Patents to improperly exert leverage in the marketplace.

*Id.* ¶ 50.

Given that the allegations that the Korean patents are "invalid" are incorporated by reference in each cause of action and also expressly stated in some claims, the issue of whether the Korean patents are "valid" or "invalid" infects the whole complaint.  Although it does not appear that Power Integrations intended to assert a claim for invalidity of the Korean patents, its use of the term "invalid" raises the concern that such a claim is intended to be asserted.  Insofar as this Court is not the proper court to determine patent validity under Korean law, the Court lacks subject matter jurisdiction and GRANTS Park's motion to dismiss the complaint on this basis. *Voda*, 476 F.3d at 898-905.  If Power Integrations chooses to amend the complaint to delete any claim or reference to invalidity, this case may go forward.

**C.    Forum Non Conveniens**

The parties' arguments on whether this Court should dismiss this case based on forum non conveniens are the very similar as those presented in Case No. 16-cv-02366 in connection with Park's motion to dismiss the complaint.  Park contends that Korea provides an adequate alternative forum, especially in this case where Power Integrations already had experience before the Korean Labor Commission.  Reply 2.  According to Park, the public interest factors counsel against having the case adjudicated in California because the case concerns Korean patents and Korea has a strong interest in deciding its own patent-related issues.  *Id.* at 3-4.

Power Integrations counters that there is a strong presumption in favor of its choice of forum.  Sur-reply 2.  Power Integrations also claims that many of its witnesses will be its employees in California, and the evidence relating to its customer relations and the development of the technology is also located in California.  *Id.* at 3.  All the private factors weigh in favor of

United States District Court
Northern District of California

1  this forum. *Id.* at 4.  As to public factors, Power Integrations claims that California has a

2  significant local interest in this dispute based on location of Power Integrations and on the IA,

3  which was entered into in California and governed by California law. *Id.* at 4-5.  Power

4  Integrations further asserts that this case concerns California law and whether issues of Korean

5  patent law would arise as a "collateral consequence" does not affect the public interest factor. *Id.*

6  at 5.  According to Power Integrations, the burden on local courts and juries also favors California.

7  *Id.*

8        Although Korea may be an adequate alternative forum, which is not disputed by the

9  parties, the Court finds that Park fails to show that a trial in California would establish

10  "oppressiveness and vexation" to him "out of all proportion to [Power Integrations']

11  convenience," or that California is "inappropriate because of considerations affecting the court's

12  own administrative and legal problems." *Sinochem*, 549 U.S. at 429.  The Court addresses each of

13  the private and public interest factors in turn.

14          **i.**    **Private Interest Factors**

15        First, with respect to "the residence of the parties," Park resides in South Korea and Power

16  Integrations is located in California so this factor is neutral.  Next, as to the residence of the

17  witnesses, Park argues that Samsung and Dong Yang reside in Korea, but Power Integrations

18  counters that Samsung and Dong Yang also have offices in San Jose.  Moreover, Power

19  Integrations anticipates that it will rely on its employees as witnesses, including witnesses who can

20  testify to Power Integrations' customer relationships, all of whom reside in California.  Sur-reply

21  3.  Accordingly, the factors of "residence of the parties and witnesses," "cost of bringing witnesses

22  to trial," and "whether unwilling witnesses can be compelled to testify" are at best neutral.

23        Second, the Court has already addressed above that while Park resides in South Korea and

24  may experience more inconvenience than Power Integrations to litigate in this forum, it is not

25  unreasonable for him to be sued in this forum.  The factor of "forum's convenience to the

26  litigants" is nevertheless neutral here.

27        Third, as to the factor of "access to physical evidence and other sources of proof," Park

28  argues evidence relating to Samsung and Dong Yang is in Korea.  Reply 4.  Power Integrations

United States District Court
Northern District of California

1   counters that it expects to present evidence relating to the parties' employment relationship,

2   formation of the IA, and development of the Proprietary Information, all of which is located in

3   California.  Sur-reply 4.  Power Integrations also avers that most of the documents are in English

4   and fewer relevant documents are authored in Korean than in English.  Given Power Integrations'

5   representation that more relevant documents are in English than in Korean, this factor weighs

6   slightly against dismissal.

7         Power Integrations admits that the factor of "the enforceability of the judgment" is neutral

8   and Park does not discuss this factor.  The judgment rendered by this Court can be enforced at

9   least in United States.  Whether it can be enforced in Korea is less clear.  Accordingly, the Court

10  finds this factor to be neutral.

11        Lastly, with respect to "all other practical problems that make trial of a case easy,

12  expeditious and inexpensive," this factor relates to the witnesses and evidence discussed above.

13  Because many of the witnesses and evidence are located in California, and will be presented or

14  testify in English, this factor weighs slightly against dismissal.

15        **ii.    Public Interest Factors**

16        The first factor, "the local interest in the lawsuit," weighs strongly against dismissal.

17  California has a strong interest in a dispute that concerns a company headquartered in California

18  and its customer relationship.  Moreover, this case also concerns intellectual property that was

19  allegedly stolen from Power Integrations, located in California.  *See, e.g.*, *Jacobs Vehicle Sys., Inc.

20  v. Yang*, No. 12-00181, 2013 WL 4833058, at *5 (M.D.N.C. Sept. 10, 2013) (refusing to dismiss

21  the case on grounds of forum non conveniens because the case affects the "integrity of [the

22  employer's] contractual and intellectual property interests in the United States").

23        Second, as to "the court's familiarity with the governing law," the Court agrees with Power

24  Integrations that this case would depend on analysis of California tort law.  Accordingly, this

25  Court would be more familiar with the governing law than the South Korean forum.  As such, this

26  factor weighs against dismissal

27        Third, the factor of "burden on local courts and juries" also weighs against dismissal.  Park

28  avers that some evidence is located in Korean. However, as noted above, Park and Power

Integrations' witnesses can testify in English, and more of the relevant documents are in English than in Korea.  As such, on balance, a slightly lesser burden would be imposed on courts in this forum than courts in Korea.

Fourth, the factor of "congestion in the court" is neutral as the parties do not identify concerns relating to "court congestion."  Lastly, as to "the costs of resolving a dispute unrelated to a particular forum," this case mainly concerns a dispute relating to the California forum but may also involve Korea as a forum, based at least on Park's residence and the ownership of two Korean patents.  Accordingly, this factor is also neutral.

In weighing all the private and public interest factors, many are neutral, none are in favor of dismissal, and a few weigh against dismissal.  As such, Park fails to meet the heavy burden of showing that the California forum results in "oppressiveness and vexation" out of all proportion to Power Integrations' convenience. *See Carijano*, 643 F.3d at 1227.  Given the "strong presumption in favor of [Power Integrations'] choice of forum" and how most factors weigh against dismissal, the Court does not find it appropriate to dismiss this case. *See Sinochem*, 549 U.S. at 430.

### D.      Failure to State a Claim

Park argues that the complaint fails to state a claim upon which relief can be granted because the claims require adjudication of Korean law, as well as for other reasons discussed for each claim separately below.  Mot. 14.  On the basis that the claims require adjudication of Korean law, the Court GRANTS the motion to dismiss the claims for reasons discussed above in connection with the Court's subject matter jurisdiction.  Setting aside the issue of subject matter jurisdiction, the Court now turns to other bases raised by Park for the complaint's failure to state a claim.

#### i.      Intentional Interference of a Contractual Relationship

Park argues that the complaint on its face fails to state a claim for intentional interference of a contractual relationship because he poses a "justification" defense.  Mot. 15, ECF 18.  Park claims that his representation to Dong Yang and Samsung that they were infringing his Korean patents was privileged conduct under Korean law.  *Id.* at 15.  Power Integrations counters that the complaint also states that Park's representation was baseless because those patents are not owned

17

United States District Court
Northern District of California

1   by Park.  Opp'n 15-16, ECF 20.  According to Power Integrations, such meritless representation is

2   not a "justification" defense.  *Id.* at 16 (citing *GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.

3   Supp. 2d 712, 741 (N.D. Tex. 2010)).

4       The Court finds that the complaint has adequately pled facts that would overcome Park's

5   justification defense.  Whether there is a justification defense to a claim of intentional interference

6   can depend on "whether the actor's conduct was fair and reasonable under the circumstances."

7   *Oyan v. Albany Int'l Corp.*, 12 F.3d 1107 (9th Cir. 1993).  *GoForIt Entm't* is instructive.  750 F.

8   Supp. 2d at 741.  The trademark owner in *GoForIt Entm't* sought summary judgment on tortious

9   interference with contract based on its "reasonable behavior" to protect its mark.  *Id.*  In denying

10  summary judgment, the court found that a reasonable jury could find that the trademark owner had

11  no colorable right and asserted the trademark in bad faith.  *Id.*  Here, the complaint contains

12  allegations that Park had no legal right to the Korean patents and was asserting those patents in

13  bad faith.  *E.g.*, Compl. ¶¶ 7, 8, 10.  Accordingly, the claim of intentional interference of a

14  contractual relationship is plausible and sufficiently pled with respect to Park's justification

15  defense.  *See also Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir. 1986)

16  (upholding the lower court's finding of tortious interference with contractual relations because

17  Universal City Studios, Inc. did not have a good faith basis in sending "cease and desist" letters,

18  threatening suit to coerce others into sharing their Donkey Kong profits).

19      Park's reliance on *Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.* is misplaced.

20  764 F.2d 69, 75 (2d Cir. 1985); Mot. 15-16; Reply 12-13.  In *Shapiro*, the issue concerned whether

21  the copyright owner published the copyrighted design without proper notice of copyright and

22  whether the efforts to cure the defective notice were reasonable.  764 F.2d at 73.  The court

23  reversed the lower court's grant of summary judgment in favor of the accused infringer because

24  "there remain[ed] a material question of fact as to whether Shapiro's efforts, taken as a whole,

25  were reasonable."  *Id.* at 75.  *Shapiro* does not stand for the proposition that a plausible

26  justification defense defeats a plausible claim of intentional interference at the pleading stage.

27  Accordingly, *Shapiro* has limited application here.

28           **ii.    Negligent Interference of a Contractual Relationship**

Park argues that negligent interference of a contractual relationship is not a claim recognized in California. Mot. 16 (citing *Fifield Manor v. Finston*, 54 Cal. 2d 632, 636 (1960)). Power Integrations does not dispute this point. The Court agrees with Park that there is no such cause of action in California. *E.g.*, *HP Debt Exch. LLC v. Wells Fargo Bank N.A.*, No. 13-04717-EDL, 2014 WL 574600, at *7 (N.D. Cal. Feb. 12, 2014) (citing *Fifield*, 54 Cal. 2d 632). As such, the Court GRANTS Park's motion to dismiss the claim of negligent interference of a contractual relationship.

### iii.   Intentional Interference with Prospective Economic Relations; Negligent Interference with Prospective Economic Relations

Park further contends that the complaint fails to allege an "independently wrongful" act in support of the intentional and negligent interference with prospective economic relations. Mot. 17-18. According to Park, the "independently wrongful" act must be a conduct separate from interference itself. *Id.* at 17 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003)). In opposition, Power Integrations reiterates its argument made in relation to the claim of intentional interference of contractual relations. Opp'n 18. Power Integrations claims that the complaint adequately pleads "independently wrongful act," stating that "Park's conduct was wrongful as it misrepresented the ownership of the [Korean] Patents, disparaged Power Integrations' products by characterizing them as infringing Park-owned patents, and violated California Business and/or Professions Code § 17200." *Id.* (citing Compl. ¶¶ 32, 39).

The Court finds that the claims of intentional and negligent interference with prospective economic relations are adequately pled. In *Korea Supply*, the court stated that "the requirement of pleading that a defendant has engaged in an act that was independently wrongful distinguishes lawful competitive behavior from tortious interference." 29 Cal. 4th at 1159. The court then found that the claim meets the "independently wrongful" requirement because there are allegations that "defendants bribed and offered sexual favors to Korean officials, and paid excessive commissions, in violation of the Foreign Corrupt Practices Act." *Id.* at 1165. Similarly here, the complaint alleges that Park obtained Korean patents based on Power Integrations' Proprietary Information, in violation of the Inventions Agreement, and misrepresented the ownership of the

Korean patents to Power Integrations' customers. Accordingly, the claims are not inadequately pled on this basis.

### iv.     Trade Libel and California UCL

Aside from arguing that this Court lacks subject matter jurisdiction because adjudication of Korean law would be necessary, Park does not raise a separate ground for failure to state a claim with respect to the trade libel and California UCL causes of action. As noted above, the Court has already granted Park's motion to dismiss the claims on the basis of lack of subject matter jurisdiction.

### E.     Leave to Amend

#### i.     Amendment to Cure Lack of Subject Matter Jurisdiction

In reading the entire complaint, allegations relating to validity of the Korean patents do not appear to be necessary to support Power Integrations' causes of action. Deletion of those allegations would obviate this Court's need to adjudicate issues relating to foreign patent law. Accordingly, the Court GRANTS leave to amend to delete instances in the complaint referring to the "validity" or "invalidity" of the Korean patents.

#### ii.     Negligent Interference of Contractual Relations

As to the claim of negligent interference of contractual relations, Power Integrations has provided no arguments as to why its claim of negligent interference of contractual relations should proceed. Power Integrations summarily requests leave to amend without specifically addressing this cause of action. Opp'n 20 n.7. Insofar as this claim is not based on a valid legal theory, the Court DISMISSES the claim of negligent interference of contractual relations with prejudice and without leave to amend.

## IV.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

Park's motion to dismiss the complaint is GRANTED IN PART with leave to amend on the grounds that this Court lacks subject matter jurisdiction on the basis that the claims require adjudication of Korean law. Power Integrations shall file an amended complaint on or before March 10, 2017.

United States District Court
Northern District of California

1    Park's motion to dismiss is also GRANTED IN PART for failure to state a claim as to

2    Power Integrations' claim of negligent interference of contractual relations, which the Court

3    DISMISSES without leave to amend.

4    Park's motion to dismiss is DENIED IN PART as to all other grounds for dismissal.

5

6    Dated: February 24, 2017

7    _____

8    BETH LABSON FREEMAN
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California